**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Union Pacific Railroad Company,

               Plaintiff,

v.

Cody Perry, et al.,

               Defendants.

No. CV-19-01439-PHX-DJH

**ORDER**

       This matter is before the Court on Defendants' Motion for Partial Summary Judgment (Doc. 49). Plaintiff Union Pacific Railroad Company ("Union Pacific") filed a Response (Doc. 56) and Defendants filed a Reply (Doc. 59). This action arises out of an accident between a Union Pacific train and a dairy truck owned by Hein Hettinga Dairy Farm (the "Dairy") and operated by its employee, Cody Perry.

## I.    Background[1]

       Union Pacific and the Dairy entered into a Private Road Crossing Agreement in October of 2010 (the "Agreement") for a private crossing used primarily by employees of the Dairy in rural Yuma County, Arizona. (Doc. 49-1 at 6-15). The Agreement lays out each party's obligations with respect to maintaining the roadway and approaches to the railway tracks. The Agreement also includes an indemnification clause that requires the Dairy to indemnify Union Pacific for any loss "regardless of whether such Loss is caused solely or contributed to in part by the negligence of [Union Pacific]." (*Id.* at 12-13). The

---

[1] The general facts in this matter are undisputed by virtue of Union Pacific's failure to attach any exhibits or evidence to their Response.

Agreement also provides that the Dairy is responsible for any modifications or repairs to the road on either side of the track that extended beyond one foot outside of each rail. The Agreement provides that Union Pacific is responsible for repairs within one foot of each rail, and for the area between the tracks. (*Id.*) In 2016, Union Pacific repaved the crossing with new asphalt. Defendants allege that the repaving was the primary cause of the accident. (Doc. 49).

On January 4, 2017, Perry was operating a new 2016 Dodge RAM 4500 and pulling a 2002 trailer used for the dairy operation. Perry was crossing the railroad tracks near the Aztec Road Crossing in Dateland, Arizona when his truck became "high centered" and stuck on the tracks. (Doc. 49 at 2). Perry attempted many maneuvers to free the vehicle. However, he was unable to move forward or backwards as his wheels were simply spinning directly on top of the tracks. (Doc. 49-5). Perry tried to call 911, but he had no cellular service in this rural area. (*Id.*) Perry testified that he attempted many other ways to free the truck by trying to unhitch the trailer from the truck, including using a jack, metal bars, shovel handles, and broomsticks, all to no avail. (*Id.* at 55). Next, he decided to run to a barn he knew was nearby to find a tractor to push the truck off the tracks, but though he found one, it would not start. (*Id.*) Perry admits that he "started to panic" at this point. Perry started running back toward the farm in an attempt to locate anyone who could help. He came across another farm employee who was driving a feed truck. Perry waved the driver down, but the driver only spoke Spanish, and Perry only speaks English. (*Id.* at 63). While Perry was trying to explain the situation to the driver of the feed truck, he heard the train whistle and saw the train approaching at "full speed." Moments later, the train crashed into the truck, causing more than $75,000.00 in damage to the Dairy truck and over $830,000.00 in damage to the train.

An Arizona Crash Report prepared by the Yuma County Sheriff's Office on January 4, 2017 found "no improper action" by either Perry or the train conductor, and no citations were issued. (Doc. 49-4). The Report indicated that the "road service condition" was a contributing factor to the crash. In addition to this Report, Defendants hired a roadway

design expert and an accident causation and reconstruction expert.  Andrew Kwasniak, offered as an expert in roadway engineering and design, completed a report finding that the repairs to the crossing made by Union Pacific in 2016 violated federal guidelines and that the crash would probably not have occurred had the railroad crossing been designed and maintained properly.  (*Id.* at 14).  Kevin Walsh conducted a reconstruction of the accident. Walsh opined that the railway crossing approaches violated the standards set forth by the American Association of State Highway and Transportation Officials ("AASHTO").  (Doc. 49-2 at 4).  Walsh concluded that even though Perry's trailer landing jack was not fully stowed, the truck and trailer would have had no trouble negotiating this crossing had it conformed to AASHTO guidelines.  (*Id.*)

Also submitted with Defendants' Motion, but not by Union Pacific, is a deposition transcript from Union Pacific's in-house expert Cynthia Thompson.  (Doc. 49 at 6).  Union Pacific disclosed Thompson as an expert on "what the expectation of driver behavior would be at a road crossing," but did not disclose any written reports or other materials.  (*Id.*)  She testified that she had no experience driving a truck and trailer, has never done a pre-trip inspection of a truck, has never attended training classes on truck operations, she was not aware of the type of truck and trailer Perry was driving, and she was not aware of the type of railroad crossing involved.  (Doc. 49-6).  She further testified that she had not read the transcript of Perry's deposition and was not aware of the particular facts of this case.  It appears that she was offered solely to opine that a commercial driver is expected to operate his truck through a railroad crossing without stopping and, that if the truck does get stuck, a driver must immediately contact emergency assistance.  (*Id.* at 4).  While acknowledging that cell service may be unavailable at many rural railroad crossings, Thompson stated she did not have an opinion on what a driver should do if they are stuck on a crossing with no way to call for assistance.  (*Id.*)

Union Pacific alleges three causes of action, all arising under Arizona state law: Negligence, Negligence Per Se, and Breach of Contract.  (Doc. 1).  Defendants filed a five Count Counterclaim, all arising under Arizona state law, that is not subject to the present

Motion.  (Doc. 7).  Defendants allege that Union Pacific violated the Agreement when they repaved the crossing, exceeding the area within one foot of each rail.  Defendants assert that this repair made the approaches too steep and is the reason that Perry's truck became stuck on the tracks.  (Doc. 49).  Union Pacific argues that Defendants are liable to pay the costs of the damages regardless of whether it was partially or fully at fault, pursuant to the indemnification clause.  (Doc. 56).

## II.    Legal Standards

The Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986); *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994).  The materiality requirement means "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

The moving party bears the initial burden of identifying the portions of the record, including pleadings, depositions, answers to interrogatories, admissions, and affidavits that it believes demonstrates the absence of a genuine issue of material fact.  *Celotex Corp.*, 477 U.S. at 323.  If the moving party meets its initial burden, the opposing party must establish the existence of a genuine dispute as to any material fact.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986).  "A fact is material if it might affect the outcome of the case, and a dispute is genuine if a reasonable jury could find for the nonmoving party based on the competing evidence."  *Hunton v. Am. Zurich Ins.* Co., 2018 WL 1182552, at *1 (D. Ariz. Mar. 7, 2018).  "[T]he non-moving party's evidence is to be taken as true and all inferences are to be drawn in the light most favorable to the non-moving party."  *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1289 (9th Cir. 1987).

1

2   **III.    Analysis**

3        Defendants move for summary judgment on all three counts in Union Pacific's

4   Complaint.  None of the parties moved for summary judgment on any of Defendants'

5   Counterclaims.  Defendants argue that there are no material facts in dispute that would

6   preclude the entry of judgment in their favor.  (Doc. 49).  In its Response—which is 9

7   pages long, does not include any exhibits or affidavits, and contains only a single out of

8   circuit citation to case law for the summary judgment standard—Union Pacific essentially

9   concedes, by failing to respond to many of Defendants' facts and arguments.  (Doc. 56)[2].

10  Moreover, as Union Pacific offers no exhibits to refute the Defendants' causation and

11  engineering design experts, those reports are uncontroverted.  With this in mind, the Court

12  will analyze the three counts in turn.

13       **A.    Negligence**

14       To establish a claim for negligence under Arizona law, "a plaintiff must prove four

15  elements: (1) a duty requiring the defendant to conform to a certain standard of care; (2) a

16  breach by the defendant of that standard; (3) a causal connection between the defendant's

17  conduct and the resulting injury; and (4) actual damages."  *Gipson v. Kasey*, 150 P.3d 228,

18  230 (Ariz. 2007) (en banc).  The first element, whether a duty exists, is a matter of law for

19  the court to decide.  *Markowitz v. Ariz. Parks Bd.*, 706 P.2d 364, 368 (Ariz. 1985).

20  "Whether the defendant owes the plaintiff a duty of care is a threshold issue; absent some

21  duty, an action for negligence cannot be maintained."  *Gipson*, 150 P.3d at 230.

22       Under Arizona law, various categories of relationships can give rise to a duty of

23  care.  "These include, but are not limited to, the landowner-invitee relationship, *Markowitz*,

24  706 P.2d at 369; the tavern owner-patron relationship, *Brannigan v. Raybuck*, 667 P.2d

25  213, 216 (1983); and those special relationships . . . that create a duty to control the actions

26  of another, *Ontiveros v. Borak*, 667 P.2d 200, 211 (1983)."  *Gipson*, 150 P.3d at 230.  If

27  the plaintiff cannot establish that defendant owes a duty of care, there can be no material

28

─────────────

[2] The Response also contains numerous spelling and citation errors.

1  facts in dispute as to whether the duty was breached and the action must be dismissed.  *Id.*

2        Union Pacific alleges in its Complaint that Defendants were negligent in the

3  operation of the truck and that this negligence was a proximate cause of the collision and

4  damages.  (Doc. 1 at 5-6).  Defendants argue that Union Pacific has not established that

5  Perry owed a duty of care, and therefore, the Court must enter summary judgment in their

6  favor.  (Docs. 49 and 59).

7        In its Response, Union Pacific argues that "for purposes of the pending summary

8  judgment motion . . . Plaintiff need not prove its entire case."  (Doc. 56 at 3).  Without

9  providing any legal authority as to the existence of a duty of care in this specific situation

10  or in general, Union Pacific argues that "Perry is an experienced driver and held a CDL

11  license."  It further argues that "Mr. Perry and the Dairy, as his employer, owed a duty to

12  Union Pacific and the community to ensure that Mr. Perry operated his vehicle in a safe

13  manner."  (Doc. 56 at 3).  Next, Union Pacific argues that its sole expert witness, Cynthia

14  Thompson, established the standard of care for a commercial truck driver when stating in

15  her deposition that "[w]hen they are approaching a road crossing, they are expected to be

16  able to operate through the crossing in its entirety with sufficient clearance without

17  stopping."  (*Id.* 56 at 5)[3].  Union Pacific concedes that Ms. Thompson has "never actually

18  driven a commercial truck or trailer."  *Id.*  Union Pacific concludes this section by stating:

19
20        It is Plaintiff's position that Mr. Perry acted negligently in failing to have the
         truck hitch fully stowed at the time of the incident and in failing to promptly
21        notify the authorities or the Railroad that his truck and trailer were stalled on
         the tracks. Mr. Perry's testimony, and that of Ms. Thompson's, create issues
22        of material fact as to what actually happened on the day of the incident, and
23        whether Mr. Perry could have acted differently to prevent the incident from
         occurring.

24
25  (*Id.* at 5).

26        Union Pacific has not shown how this single statement from Ms. Thompson in her

27  deposition establishes the duty of care as a matter of law as they provide no case law on

28  _____
   [3] Union Pacific does not provide the testimony of its own retained expert witness, but rather cites to Defendants' evidence.

this issue.  Therefore, Union Pacific has not met its burden of establishing the first element of its negligence claim.  Contrary to its assertion that it "need not prove its entire case," this is not the standard for defeating a motion for summary judgment.  *See Matsushita Elec. Indus. Co.*, 475 U.S. at 585–86.  As Union Pacific has not established that a duty exists as a matter of law, there cannot be material facts in dispute as to whether Defendants breached that duty.  Therefore, Defendants' Motion for Summary Judgment as to the Negligence claim will be granted.

### B.    Negligence Per Se

In Count Two, Union Pacific alleges that Perry committed negligence per se when he violated "the Arizona Transportation Code."  (Doc. 1 at 6).  Defendants also seek summary judgment on this claim, arguing that Union Pacific cannot establish the necessary elements.

"A violation of an ordinance or statute forbidding a party to do a certain act is negligence per se."  *Deering v. Carter*, 376 P.2d 857, 860 (1962).  Moreover, a claim for negligence per se must be based on a statute enacted "for the protection and safety of the public."  *Steinberger v. McVey ex rel. Cty. of Maricopa*, 318 P.3d 419, 433 (Ariz. Ct. App. 2014).  The violation of a statute itself does not establish negligence per se.  For instance, "driving in excess of definitely specified speed limits is not negligence per se for the reason that the statute provides that exceeding such limits is only prima facie evidence of negligence."  *Deering*, 376 P.2d at 860.

As an initial matter, Union Pacific's Complaint on this count is very sparse.  The only reference to a statute being violated, a requirement of negligence per se, is a single sentence alleging that "Defendants violated the Arizona Transportation Code."  (Doc. 1 at 6).  Therefore, Defendants correctly point out in their Motion that they have no way defend against this claim because Union Pacific has not even alleged the violation of a particular statute, let alone a statute that expresses "rules of conduct in specific and concrete terms as opposed to general or abstract principles."  (Doc. 49 at 11).  It is certainly unreasonable to believe that Defendants should have been prepared to defend this claim based on every

single section of the Arizona Transportation Code, which spans 30 chapters and thousands of pages.  A.R.S. §§ 28-101–9558.

Union Pacific argues in its Response, apparently for the first time, that its negligence per se claim is based on a violation of A.R.S. § 28-873.  (Doc. 56 at 6).  As noted previously, discovery in this matter ended 18 months ago, and the time to amend the Complaint has long passed.  It is unreasonable and prejudicial for Union Pacific to put Defendants on notice of the basis for this claim for the first time in a response to a Motion for Summary Judgment.  The claim also falls short of Rule 8 pleading standards, and for these reasons it fails.

However, even assuming this statute was the basis for this claim, the Court finds that Union Pacific has not established that Perry violated it.  A.R.S. § 28-873 provides that, "except if necessary to avoid conflict with other traffic or if in compliance with law or the directions of a police officer or traffic control device, a person shall not stop, stand or park a vehicle in any of the following places: (9) Within fifty feet of the nearest rail or a railroad crossing or within eight feet six inches of the center of any railroad track."  Union Pacific does not allege that Perry intentionally parked his truck on the railway.  What Union Pacific does argue is that Perry parked on the railroad tracks in violation of Arizona law.  (Doc. 56 at 7).  However, as Union Pacific argues in their Response, the Court must "give effect to the intent of the legislature . . . to prohibit stopping in the specified places for purposes other than those which constitute normal and lawful incidents of driving."  (Doc. 56 at 6) (citing *Alaface v. National*, 181 Ariz. 586, 592 (Ariz. Ct. App. 1994); *Smith v. Bowman*, 544 P.2d 246, 247 (Ariz. Ct. App. 1976).

There is no evidence that Perry intentionally "park[ed] a vehicle" on the railroad crossing.  Nor has Union Pacific provided any legal authority that a truck becoming unintentionally stuck violates the statute.  Contrary to Union Pacific's arguments that these issues should be addressed at trial, it has not established, by evidentiary exhibits or legal authority, an existence of material fact that precludes the Court from entering judgment. Therefore, the Court grants Defendants' Motion on this claim.

1

### C.    Contract Claim

2          Defendants argue that Union Pacific's contract claim fails because the

3   indemnification clause is void as a matter of law and that the Agreement is invalid as a

4   result of Union Pacific's material breaches of the Agreement.  (Doc. 49 at 14).  Union

5   Pacific argues that the indemnification clause is valid under Arizona law and that fact

6   issues remain on the issue of the breach of the contract.  (Doc. 56).

7          To succeed on a breach of contract claim, a party must prove the existence of a

8   contract between the parties, a breach of contract terms and resulting damages.  *See*

9   *Coleman v. Watts*, 87 F. Supp. 2d 944, 955 (D. Ariz. 1998) (citing *Clark v. Compania*

10  *Ganadera de Cananea*, S.A., 387 P.2d 235, 237 (Ariz. 1963)).  "For an enforceable

11  contract to exist, there must be an offer, an acceptance, consideration, and sufficient

12  specification of terms" to ensure the parties understand their obligations thereunder.

13  *Contempo Const. Co. v. Mountain States Tel. & Tel.Co*., 736 P.2d 13, 15 (Ariz. Ct. App.

14  1987).  "A contract should be read in light of the parties' intentions as reflected by their

15  language and in view of all the circumstances. If the intention of the parties is clear from

16  such a reading, there is no ambiguity."  *Smith v. Melson, Inc*., 659 P.2d 1264, 1266 (Ariz.

17  1983).

18         The Agreement's indemnification clause requires the Dairy to indemnify Union

19  Pacific for any loss "regardless of whether such Loss is caused solely or contributed to in

20  part by the negligence of [Union Pacific]."  (*Id.* at 12-13).  Defendants argue that

21  indemnification clauses such as these are invalid under federal and state law.[4]  Defendants

22  also argue that the "Arizona Supreme Court has invalidated indemnity clauses in private

23  crossing agreements with railroads," and cite to *S. Pac. Co. v. Gila River Ranch, Inc*., 460

24  P.2d 1, 2 (1969).  However, that case stands for the conclusion that "contracts of indemnity

25  will not be constructed to cover losses to the indemnitee caused by his own negligence

26  *unless such intention is expressed in clear and unequivocal terms*."  *Id*. (emphasis added).

27

28
---
[4] As the parties agree that all of the claims in this lawsuit are brought under Arizona law, the Court will not consider the Fourth Circuit case cited by Defendants for this proposition. (Doc. 49 at 14).

Therefore, the issue is whether this type of indemnification clause "is expressed in clear and unequivocal terms." *Id.*

Here, the Agreement provides that the Dairy must indemnify Union Pacific for any loss "regardless of whether such Loss is caused solely or contributed to in part by the negligence of [Union Pacific]."  Defendants do not attempt to argue that this provision is not "expressed in clear and unequivocal terms."  Moreover, the Defendants do not argue that the Agreement was entered into under duress, or is somehow voidable.  Without any evidence to the contrary, the Court must presume, based on the plain language of the Agreement, that the parties clearly and unequivocally included a contractual provision in the Crossing Agreement which provides indemnification for the railroad's own negligence. Therefore, the Court finds that this provision is not unenforceable as a matter of law.

As to Defendants' argument that Union Pacific's actions in maintaining the crossing breached the Agreement, Defendants argue the following:

> "In addition, Union Pacific initially violated the contract by modifying the roadway beyond one foot from the tracks, so this breach of contract excuses [the Dairy] from the indemnity clause. When one party initially materially breaches a contract, the other party is excused from performance under that contract. RAJI (Civil) 6th, Contract 9 (Failure of Consideration/Material Breach), at 11 (2020). The affirmative defense of failure of consideration/material breach applies in this case and renders the indemnity clause unenforceable by Union Pacific."

(Doc. 49 at 14).  Union Pacific argues that it repaired the crossing at the request of Defendants, and therefore no breach occurred.  (Doc. 56).  As to this issue, the parties have not provided sufficient evidence or legal authority to support their arguments.  The Court cannot proceed to determine whether a breach occurred without additional supporting evidence.  Therefore, the Motion for Summary Judgment as to Count Three of the Complaint is denied.

## IV.   Conclusion

Union Pacific's arguments that it "takes issue with Defendants facts," and that it will prove its case "at the time of trial," are without merit.  "At the pleading stage, general

factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). However, this case is far past the pleading stage.  This matter was filed on March 1, 2019. (Doc. 1).  The parties participated in discovery and the discovery deadline passed over 18 months ago on January 31, 2020.  (Doc. 26).  The time for resting on the allegations in the Complaint has long since passed.  *See id.* (In response to a summary judgment motion, the plaintiff can no longer rest on mere allegations, but must set forth facts by affidavit or other evidence).  Union Pacific has not established a genuine dispute of material facts on its negligence and negligence per se claims, and thus, Defendants are entitled to summary judgment on these claims.  The Court does not have sufficient evidence from the parties to determine the contract claim, and thus, Defendants have not met their burden to establish that summary judgment is warranted on Count Three.  As Count Three is not brought against Defendant Perry, he will be dismissed from this action.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Partial Summary Judgment is **granted in part**, as to Counts One and Two, and **denied in part** as to Count Three.  The Court finds that there is no reason for delay and that judgment on these claims shall be entered immediately in favor of Defendants.  *See* Fed. R. Civ. Pro. 54(b). Defendant Cody Perry is hereby dismissed from this action.

**IT IS FURTHER ORDERED** that Plaintiff shall file a Notice of Readiness for Final Pretrial Conference within ten (10) days of this Order and in compliance with the parties' Scheduling Order (Doc. 26).

Dated this 25th day of August, 2021.

Honorable Diane J. Humetewa
United States District Judge

- 11 -